**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CARLOS LAUREANO-CASTELLON, | : | MOTION TO VACATE |
| | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:10-CR-083-ODE-JSA |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| | : | 1:13-CV-784-ODE-JSA |
| Respondent. | : | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant Carlos Laureano-Castellon has filed the instant motion to vacate pursuant to 28 U.S.C. § 2255.[1] Movant seeks to challenge the constitutionality of

---

[1] Prior to serving as a U.S. Magistrate Judge, the undersigned served as an Assistant U.S. Attorney ("USAO") in the same office that prosecuted Movant, from approximately 2004 through June 1, 2012. The undersigned served as deputy chief of the economic crime section of the USAO for some of that period. The undersigned recalls no personal or supervisory involvement over defendant's case.

Although no request for recusal has been made, the undersigned will briefly explain why he has not recused *sua sponte*. Title 18 U.S.C. § 455(b)(3) requires a judge who previously served in government to recuse only if the judge actually participated in the case. *Mangum v. Hargett*, 67 F.3d 80, 83 (5th Cir. 1995). In other words, "a judge is not subject to mandatory disqualification based on the mere fact that another lawyer in his prior government office served as an attorney on the matter." *United States v. Champlin*, 388 F. Supp. 2d 1177, 1180 (D. Haw. 2005). Several courts have held that "an Assistant United States Attorney is only disqualified from cases on which he or she actually participated." *Id.* (citing *United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir. 2001) ("As applied to judges who were formerly AUSAs, § 455(b)(3) requires some level of actual participation in a case to trigger disqualification."); *Mangum*, 67 F.3d at 83 (same); *Kendrick v.*

his sentence, which was imposed on December 6, 2011, following a guilty plea entered in the Northern District of Georgia.

I.   Procedural History

On May 10, 2011, Movant entered into a guilty plea in the Northern District of Georgia to one count of conspiracy to import methamphetamine into the United States from Mexico in violation of 21 U.S.C. §§ 963 and 960(b)(3), one count of importing methamphetamine into the United States from Mexico in violation of 21 U.S.C. §§ 952(a) and 960(a), (b)(3), and Title 18 U.S.C. § 2, one count of knowingly and intentionally conspiring to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), and one count of knowingly and intentionally possessing with the intent to distribute methamphetamine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2.  (Docs. 6, 49 and Doc. 49, Att. 1).  The

---

*Carlson*, 995 F.2d 1440, 1444 (8th Cir. 1993) (same).  "[T]he same rule applies to former supervisors in the United States Attorney's office; § 455(b)(3) requires recusal only when the supervisor actually participated in a case." *Champlin*, 388 F. Supp. 2d at 1181; *United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999); *United States v. Di Pasquale*, 864 F.2d 271, 279 (3d Cir. 1988).  As the undersigned was uninvolved in this case and otherwise perceives no ground for recusal, the Court does not *sua sponte* find that recusal is warranted.

2

plea agreement contains a waiver of Movant's appellate and collateral rights ("appellate waiver"). (Doc. 49, Att. 1, at 12). On December 6, 2011, Movant was sentenced to one hundred thirty-five (135) months of imprisonment, to be followed by three years of supervised release. (Doc. 58).

Thereafter, Movant filed a direct appeal and raised one issue: that the district court erred in applying the Sentencing Guidelines by relying on an "unconstitutionally obtained state court conviction." (Doc. 87, Att. 1). On August 6, 2012, the Eleventh Circuit granted the Government's motion to dismiss the appeal because it was barred by the appellate waiver. (Doc. 87, Att. 3).

Movant filed the instant § 2255 motion on March 5, 2013.[2] (Doc. 82). In the motion, Movant raises the following claims: (1) the Court erred by relying on an unconstitutional state court conviction in determining his sentence; (2) the Government breached the plea agreement by denying the "safety valve" reduction, thereby rendering his plea involuntary; and (3) counsel was ineffective relating to Movant's failure to receive a safety valve reduction. (Doc. 82). The Government

---

[2] Although the motion to vacate was filed with the Clerk of Court on March 11, 2013, under the mailbox rule, it is deemed to be filed on March 5, 2013, the date that Movant signed the § 2255 motion. *See Rodriguez v. United States*, 279 F. App'x 753, 753 (11th Cir. 2008).

3

argues that the appellate waiver and/or the law-of-the-case doctrine bar Movant's claims. The undersigned agrees.

II.     Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States, (2) that the court was without jurisdiction to impose such sentence, (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (internal quotation marks and citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present

4

"exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989). As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

III.  Analysis

A.  Movant's Plea Was Knowing and Voluntary.

An appellate waiver does not bar claims for ineffective assistance of counsel relating to the plea agreement or waiver, or claims challenging the voluntariness of the plea. *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007); *Williams v. United States*, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005). The undersigned therefore must review Movant's claim that his plea was involuntary because the Government breached its "promise" that Movant would receive a

5

safety valve reduction.[3]  First, the record belies Movant's claim, as the plea agreement contains no such promise.  (*See* Doc. 49, Att. 1).  Additionally, Movant's claim is in direct conflict with his sworn testimony during the plea hearing, and there is a strong presumption that statements made during the plea colloquy are true.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Anderson*, 384 F. App'x 863, 865 (11th Cir. 2010) ("There is a strong presumption that statements made during a plea colloquy are true."); *accord, United States v. Munguia-Ramirez*, 267 F. App'x 894, 897 (11th Cir. 2008)*; Patel*, 252 F. App'x at 974.  Where, as here, a Movant's claim is in direct conflict with his statements under oath, he has a strong burden to show that his statements under oath were false.  *Patel*, 252 F. App'x at 974-75.  Movant, however, has not met this burden.

During the plea hearing, Movant was provided with a court-appointed interpreter and swore that:  he entered the plea through his own free will; nobody forced or coerced him to plead guilty; no one promised him anything other than

---

[3] As discussed *infra* in Section III.B., Movant's ineffective assistance of counsel claim does not relate to the plea agreement or the waiver.

6

what was contained in the written plea agreement; he had reviewed the plea agreement and guilty plea with his attorney and understood it. (Doc. 76 at 10). Additionally, Movant's sworn statements indicate that Movant understood that the maximum sentence he faced was twenty years imprisonment on each count, that the Court did not have to accept any recommendations by the Government regarding certain applications of the Sentencing Guidelines, and that Movant could not withdraw his plea even if he received a more severe sentence than the guideline range. (*Id.* at 5, 10).

Moreover, neither Movant's attorney nor counsel for the Government were definitive when asked by the Court whether the safety valve would, in fact, apply in Movant's case,[4] and the Court explicitly advised Movant that "counsel believe that your guideline range is going to wind up being a good bit below this 235 to 293 months, but we can't exactly figure out what it's going to be" and "anything that we say at this point is just an estimate." (Doc. 76 at 8). Thus, despite Movant's current self-serving claim that he relied on the Government's alleged "promise" of a safety valve reduction in entering his plea, he has not overcome the

---

[4] Movant's attorney stated, "I *think* safety valve would be taken off of that[.] . . ." (Doc. 76 at 8) (emphasis added). The Government's attorney then responded that "it *might* apply." (*Id.*) (emphasis added).

7

strong presumption of the veracity of his sworn statements during the plea hearing. *See United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (noting that testimony at a plea allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made."); *Abdul-Aziz v. United States*, No. CIV A 1:05CV86, CRIM A 1:03CR39, 2008 WL 4238943, at *6 (N.D. W.Va. Sept. 12, 2008) ("Simply because the petitioner now says [an oral] agreement existed, does not make it so, particularly in light of the testimony the petitioner gave under oath at his plea hearing.").

Because the plea agreement and the record belie Movant's claim that the Government promised him a safety valve reduction, the Government did not breach any such promise and Movant's plea was knowingly and voluntarily entered into. *See United States v. Kerley*, 230 F. App'x 919, 922 (11th Cir. 2007) (rejecting appellant's claim that the Government breached the oral plea agreement by presenting evidence that would make him ineligible for a safety valve reduction because the plea agreement contained no restrictions on the Government with regard to safety valve relief, and all references to the possibility of the appellant

8

receiving a safety valve reduction at the plea hearing were couched in conditional language and did not constitute a promise by the Government); *United States v. Adams*, 321 F. App'x 449, 457-58 (6th Cir. 2009) (rejecting appellant's claim that the Government breached the plea agreement by failing to inform the district court of her efforts to qualify for a safety valve reduction because, *inter alia*, the plea agreement explicitly provided that the Government made no promises to her); *United States v. Lopez*, 180 F. App'x 321, 323 (3d Cir. 2006) (rejecting appellant's claim that the Government breached his plea agreement by failing to provide him with a safety valve reduction, because "[i]n the plea agreement, the government never agreed to provide or make recommendations regarding any 'safety valve' downward departures"); *Morales v. United States*, Nos. 5:11-cv-7, 5:08-cr-1981, 2011 WL 1528101, at *6 (S.D. Tex. Apr. 20, 2011) (rejecting § 2255 movant's claim that the Government breached its promise to recommend a safety valve reduction because the plea agreement did not include any such promise, the plea agreement purported to be the complete agreement, and the movant had stated that no one had promised him anything in order to get him to plead guilty).

Regardless, even if the Government breached a promise in the plea agreement, that does not render Defendant's plea involuntary. *See Puckett v.*

9

*United States*, 556 U.S. 129, 137 (2009) ("[T]here is nothing to support the proposition that the Government's breach of a plea agreement retroactively causes the defendant's agreement to have been unknowing or involuntary. Any more than there is anything to support the proposition that a mere breach of contract retroactively causes the other party's promise to have been coerced or induced by fraud.") Had the Government promised to take the position that the safety valve applies, the Defendant's remedy would have been to specifically enforce that promise (which, like all the other promises in the plea agreement, was ultimately not binding on the Court). A breach of such promise would not allow Defendant to retroactively withdraw his plea.

> B. All of Movant's Remaining Claims for Relief are Barred by the Waiver and Law-of-the-Case Doctrine.

Movant raises two other grounds for relief: (1) the Court erred by relying on an unconstitutional state court conviction in determining his sentence, and (2) counsel was ineffective relating to Movant's failure to receive a safety valve reduction. The appellate waiver, however, prohibits Movant from raising these claims.

10

An appellate waiver will be enforced if it is made knowingly and voluntarily. *See United States v. Wilson*, 445 F. App'x 203, 207 (11th Cir. 2011); *United States v. Ramos*, 433 F. App'x 893, 895 (11th Cir. 2011); *Williams*, 396 F.3d at 1342; *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). "[O]ne of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'" *Bushert*, 997 F.2d at 1350 (citations omitted). In order to prevail in an argument to enforce a waiver, the Government must show that either "(1) 'the district court questioned the [movant]' about the waiver; or (2) the record makes clear 'that the [movant] otherwise understood the full significance of the waiver.'" *Wilson*, 2011 WL 4840953, at *4 (quoting *Bushert*, 997 F.2d at 1351); *Ramos*, 433 F. App'x at 895-96; *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). In this case, the Government has demonstrated both.

> The appellate waiver contained in the Plea Agreement provides as follows:
>
> LIMITED WAIVER OF APPEAL:  To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or a

11

>
> variance from the sentencing guideline range. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 49, Att. 1 at 12).

As discussed *supra*, the record establishes that Movant knowingly and voluntarily entered into his plea agreement, which included the appellate waiver. When Movant acknowledged that he had voluntarily entered into the plea agreement during the plea colloquy, he also acknowledged that he understood he was waiving his right to appeal. (Doc. 76, at 9, 16). Moreover, the Eleventh Circuit specifically found in this case that Movant's appellate waiver is valid and enforceable. (Doc. 87, Att. 3). As such, the law-of-the-case doctrine prohibits this Court from reconsidering this issue. *See United States v. Lynn*, 385 F. App'x 962, 965-66 (11th Cir. 2010) (holding that appellate court's prior decision that appeal waiver was valid was the law of the case and barred the defendant's subsequent challenge to his sentence); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.") (quotation marks and citations omitted).

12

Thus, Movant's claims – including Movant's ineffective assistance of counsel claim which relates only to counsel's conduct at sentencing and/or appeal – are barred by the waiver. *See United States v. Riolo*, 398 F. App'x 568, 570-71 (11th Cir. 2010) ("[T]he waiver would prevent [the movant] from raising a claim of ineffective assistance of counsel at sentencing[.] . . ."); *Patel*, 252 F. App'x at 974 ("We have held that a valid appeal waiver precludes § 2255 claims based on ineffective assistance of counsel at sentencing."); *Williams*, 396 F.3d at 1342 (holding that a valid sentence-appeal waiver, entered into voluntarily and knowingly pursuant to a plea agreement, precludes the movant from attempting to attack the sentence in a collateral proceeding through a claim of ineffective assistance of counsel during sentencing); *Vaca-Ortiz v. United States*, 320 F. Supp. 2d 1362, 1365-66 (N.D. Ga. 2004) (O'Kelley, J.) (holding a waiver of the right to appeal or mount a collateral attack can serve to bar a subsequent claim of ineffective assistance of counsel during sentencing.).

AO 72A
(Rev.8/82)

IV.   Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Movant Carlos Laureano-Castellon's motion to vacate sentence [Doc. 82] be **DENIED**.

V.   Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion.  *See id.*  "The question is the debatability of the underlying constitutional

claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant's plea was voluntary and that his claims are barred by the appellate waiver and/or law-of-the-case doctrine. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 29th day of August, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

15